THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN VEGA SANTOS, Defendant and Appellant.

No. CR-62-327.      Decided May 3, 1963.

*Eduardo M. Díaz Porto* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

PER CURIAM: At a trial by jury held in the Bayamón Part of the Superior Court, Juan Vega Santos was charged with and found guilty of an offense of involuntary manslaughter consisting in having killed Nemesio Sánchez Montañez with a truck which he was operating on or about June 17, 1960. The jury brought a verdict of guilty and he was sentenced to serve one-year imprisonment in jail and his driver's license was suspended for a period of two years, counted as of the date the sentence was served. It was alleged in the information that while defendant was operating a certain truck on highway No. 2, Km. 38, Hm. 5, of Vega Baja, P.R., through his lack of prudence and circumspection, without blowing the horn, without taking due precautions to guarantee the safety of lives and property, driving at excessive speed greater than that which would permit him to exercise due control of the vehicle and without reducing the speed, he ran over Sánchez Martínez and then fled, causing him several injuries and wounds as a result of which he died. The evidence in support of the information consisted of the testimony of: (1) Dr. Antonio Carro, who testified on the causes of the deceased's death and on the identification of the body, and lastly, on cross-examination, that in order to produce the injuries which the body presented the vehicle must have been traveling at moderate speed "because what it fractured was the leg and he fell" (T.E. pp. 3, 4, 5 and 8); (2) Antonio Padilla, who testified that he was traveling in the truck with defendant the night of the accident, that he saw Sánchez Montañez zigzagging on the side of the road along which the truck driven by defendant was traveling; that he was walking in the same direction as the truck and at about six feet from the side of the road; that the truck was traveling fast; that the witness called defendant's attention "there is someone in front of you,"

and that he then ran over Sánchez Montañez; that defendant did not stop the truck after the accident until he reached a traffic light at about 20 feet from the scene of the accident because the witness told him to proceed, "they'll catch you," and that they proceeded to the witness' house; that the witness advised defendant not to surrender himself that night because he was very nervous and could be involved in an accident; that a truck traveling in the opposite direction "dazzled" defendant; that he did not see Sánchez until he was about six feet "from the truck" (T.E. pp. 11, 12, 13, 14, 16, 17 and 19) ; (3) Ángel Manuel García testified that the night of the accident he was in the police patrol service, that he was ordered to report to the place where the deceased's body was lying and that he found it at about 600 feet from the traffic light in question; that he investigated, but did not find brake marks on the road (T.E. pp. 33 and 35) ; (4) Laureno Riestra Fernández described his participation in the investigation made the day after the accident, as a result of which he went to defendant's house "to ask him to go to police headquarters because he was connected with the accident," and that the latter accompanied him; that defendant told him that he was involved in the accident and that he had fled (T.E. pp. 37 and 38). The defense did not offer any evidence. Thereupon the trial judge transmitted his instructions to the jury, making a correct summary of the evidence and an exposition of the law on the offense of involuntary manslaughter and the manner in which the jury should weigh the evidence, and then charged:

"In this case the district attorney has offered evidence that defendant fled from the place after the occurrence of the facts. I must charge you that the flight of a person immediately after the commission of a crime or of a wrongful act is a circumstance which may be considered by the jury as evidence of a conscience not exempt from guilt; although the court instructs you that such evidence is not by itself sufficient to establish defendant's guilt. The flight or escape is a circumstance to be considered and

weighed as tending to prove a consciousness of guilt, the signifi-
cance or insignificance of which, as well as the weight to which
it is entitled, is to be determined by the jury together with all
the attendant circumstances in the case." (T.E. pp. 13 and 14.)

Lastly, he instructed the jury on the provisions of the Auto-
mobile and Traffic Act of April 5, 1946 on the speed at
which vehicles must be driven and the duty of the operator
to stop it upon the occurrence of an accident and to give
his name, address and license number to the aggrieved party
or to the police, and to report the details of the accident to
the nearest police station, and respecting his obligation to
take the injured person to the nearest hospital or to his
residence. To that effect, the trial judge read the provisions
of §§ 15 and 17(b) of that Act (9 L.P.R.A. §§ 185 and
187).[1]

On appeal, defendant-appellant alleges that the trial court
committed the following errors:

1.—In instructing the jury on the provisions of the
Automobile Act on flight or escape, or the failure to report
the occurrence of an accident, and the failure to instruct
them that they could bring a verdict of guilty for violation
of the said Act and of acquittal as to involuntary man-
slaughter.

Appellant contends that if he had been charged, as ele-
ment of negligence, with driving in a state of intoxication
or at excessive speed, the court could instruct the jury on
the pertinent provisions of the Automobile Act, since under
such circumstances such acts are criminal under the said
Act; that this is not the case when one accused of causing
an accident takes to flight, since the latter does not con-
stitute negligence in itself; that in a case such as this the
jury must be instructed only on the offense for which the
accused is on trial, since the violation of the Automobile

---

[1] The pertinent provisions of the Vehicle and Traffic Law of July 20,
1960 are §§ 5-101, 4-101 and 4-103 (9 L.P.R.A. §§ 781, 783 and 841).

Act consisting in failing to report the accident to the police is not comprised within the offense of involuntary manslaughter.

We agree with the Solicitor General that the case law cited by defendant in support of his theory is not applicable, since it refers to cases in which the trial court (a) found defendant guilty of the offense charged, even though the evidence was sufficient to support a charge of another offense, *People* v. *Álvarez*, 56 P.R.R. 18 (1940); (b) it transmitted instructions on a lesser offense without basis on the evidence, it having been held that this is not prejudicial to defendant nor renders invalid a verdict for such lesser offense, *People* v. *Blanco*, 77 P.R.R. 726 (1954); and *People* v. *Muñiz*, 77 P.R.R. 808 (1955); (c) it failed to transmit instructions on the crime of abortion as being improper in a case in which the information is for murder in the second degree. *People* v. *Cirino*, 69 P.R.R. 488 (1949).

■■ The instructions were conclusive in the sense that evidence of a person's flight immediately after the commission of a crime is not by itself sufficient to establish defendant's guilt. Said the court: "The flight or escape is a circumstance to be considered and weighed as tending to prove a consciousness of guilt, the significance or insignificance of which, as well as the weight to which it is entitled, is to be determined by the jury together with all the attendant circumstances in the case" (Instructions, pp. 13–14). The instructions were not inconsistent or irreconcilable among themselves and, therefore, the case of *People* v. *Alsina*, 79 P.R.R. 44 (1956), cited by defendant-appellant, is not applicable. The language employed by respondent court was circumspect and reveals a select inflexibility which guaranteed the protection due defendant's rights. *People* v. *López*, 77 P.R.R. 573, 582 (1954).

2.—The court failed to instruct the jury on Blashfield's speed charts or rules.

■ Defendant alleges that since witness Padilla testified that the truck stopped 20 feet from the place of the accident, the jury had sufficient evidence to receive instructions on Blashfield's speed charts or rules which would have shown that the truck was traveling at a speed of less than 30 kilometers per hour, which does not mean traveling fast as testified by Padilla. This error was not committed since, in the first place, in order to calculate the truck's speed it was necessary to submit evidence on the distance covered from the moment the defendant applied the brakes until he brought the vehicle to a full stop, and no such evidence was introduced; and, in the second place, Padilla's testimony was contradicted by that of witness Ángel Manuel García, the peace officer who investigated the accident and who testified that the distance between the place where the body was found and the traffic light was from 500 to 600 feet. Such charts were applied in the opinion delivered by Mr. Justice De Jesús, in which Mr. Justice Snyder concurred, in *Rosado* v. *Rosario*, 69 P.R.R. 158 (1948), because the evidence established that the vehicle was at a distance of 30 feet when the injured started to cross the avenue where he was run over.[2] In the case under consideration the existence of a similar situation was not established.

3.—Defendant-appellant assigns as third and last error the insufficiency of the evidence to support a verdict of guilty.

■■ This error is without basis. Evidence was introduced to the effect that defendant was traveling at a speed which did not permit him to control the vehicle upon applying the brakes before the accident, and further, that due prudence and circumspection was not exercised in the opera-

---

[2] In the other opinion delivered in this case by Mr. Justice Todd, Jr., in which Mr. Chief Justice Travieso concurred, it was emphasized that value was given to these charts "without accepting that we should adopt them as applicable to cases of this nature." See, also, *Morales* v. *Castro*, 85 P.R.R. 275 (1962).

tion of the vehicle to the point of not seeing and, hence, running over Sánchez Montañez on a straight and unobstructed road and under circumstances in which the visibility was sufficient to have avoided the accident. The jury was bound in the last instance to decide any conflict in the evidence. Its determination finding defendant guilty is supported and warranted by the evidence.[3] *People* v. *López*, 77 P.R.R. 573 (1954).

The judgment appealed from will be affirmed.

---

[3] The circumstances of this case are different from those of *People* v. *Ortiz*, 86 P.R.R. 431 (1962), and *People* v. *Pérez*, 79 P.R.R. 460 (1956), in which we acquitted defendants in concluding that the aggrieved parties darted out unexpectedly into the highway so that the accidents which resulted in their death were inevitable.